UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

JULIETA ALVAREZ,                    )   No. CV 11-07444-VBK
                                    )
              Plaintiff,            )   MEMORANDUM OPINION
                                    )   AND ORDER
      v.                            )
                                    )   (Social Security Case)
MICHAEL J. ASTRUE,                  )
Commissioner of Social             )
Security,                          )
                                    )
              Defendant.            )
_____)

     This matter is before the Court for review of the decision by the
Commissioner of Social Security denying Plaintiff's application for
disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have
consented that the case may be handled by the Magistrate Judge.  The
action arises under 42 U.S.C. §405(g), which authorizes the Court to
enter judgment upon the pleadings and transcript of the record before
the Commissioner.  The parties have filed the Joint Stipulation
("JS"), and the Commissioner has filed the certified Administrative
Record ("AR").

     Plaintiff raises the following issues:

     1.   Whether the Administrative Law Judge ("ALJ") conducted a

full and fair hearing;

2.   Whether the ALJ complied with the Memorandum Opinion and Order of the District Court;

3.   Whether the vocational expert's testimony has any value in this case; and

4.   Whether competent expert testimony supports a finding of disability.

(JS at 5.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.  After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE HEARING ON REMAND BEFORE THE ALJ DID NOT AMOUNT TO A COGNIZABLE DENIAL OF DUE PROCESS TO THE PLAINTIFF**

In Plaintiff's first issue (JS at 1-19), she asserts that at the hearing conducted by the ALJ following this Court's remand order (AR 742-758), the ALJ exhibited a level of bias and unfairness that denied Plaintiff due process.

As the parties understand, the standard for the Court to find a due process violation is very high.  There must be a demonstration of actual bias to result in disqualification of an Administrative Law Judge.  Social Security Regulations articulate the requirement that, "An Administrative Law Judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." (20 C.F.R. § 404.940.)  Case law reflects the same stringent requirements.  Most recently, this

standard was expressed by the Ninth Circuit in <u>Valentine v. Commissioner</u>, 574 F.3d 685, 690 (9th Cir. 2009)(holding that a presumption that an ALJ is unbiased can be rebutted by showing conflict of interest or specific reasons for disqualification other than expressions of impatience, dissatisfaction, annoyance, and even anger "that are within the bounds of what imperfect men and women sometimes display, ..." [<u>Id</u>. at 590, citing <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001]).

As reflected in the JS, Plaintiff believes that the ALJ in this case did express a bias which amounted to a due process violation. A number of instances of such bias are cited by Plaintiff. These include the ALJ's asking Plaintiff about her citizenship or legal resident status (AR 713); interrupting counsel for Plaintiff when counsel attempted to pose questions to the vocational expert ("VE") (AR 731-733); questioning Plaintiff's work background (AR 714-715); and offering an amended onset date which, if accepted, allegedly would have led to a finding of disability commencing on the earlier onset date (AR 734-735).

After a close examination of the record, the Court cannot agree with Plaintiff that her hearing was conducted in a manner which deprived her of due process. Thus, while the ALJ did ask about Plaintiff's green card status, this occurred during a very brief interchange at the outset of the hearing, and, most importantly, there is nothing in the decision which leads the Court to indicate that the ALJ relied upon Plaintiff's immigration status in reaching his decision. This is in contrast to the first hearing, which led to the Court's remand order based on a record which indicated that the ALJ had relied upon Plaintiff's immigration status as a factor in the

determination of her credibility.

With regard to questioning about Plaintiff's work background, the Court again cannot find a due process violation, because a claimant's work history is relevant under applicable regulations. See 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1).

A more serious allegation is that the ALJ thwarted Plaintiff's counsel from asking appropriate and relevant questions to the VE. But again, when examining the record, the Court finds no due process infirmity. Essentially, several of the questions posed by Plaintiff's counsel with regard to the extent of functional limitations of a hypothetical individual were ambiguous, and the Court views the ALJ's disallowance of such questions as part of his proper function to regulate the hearing, and to adduce relevant evidence. While Plaintiff's counsel believes that the VE's similar expression of confusion as to some of the terms utilized by Plaintiff's counsel indicates that the VE was mimicking the ALJ's assertedly disingenuous confusion about these terms, the Court finds nothing in the record to attribute such motivations to the VE. When Plaintiff's counsel ultimately posed a hypothetical question which contained clear functional limitations, the ALJ permitted it.

Finally, Plaintiff's belief that the ALJ would have offered an earlier onset date for disability if Plaintiff would have amended her onset date is a speculative conclusion. There is nothing in the record which indicates that an earlier onset date of disability was in fact offered by the ALJ. In any event, on remand, the ALJ did find Plaintiff to be disabled as of February 15, 2011, based on the evidence adduced before him. It would appear that if the ALJ believed that Plaintiff's disability had an earlier onset date, he would have

so found.

For the foregoing reasons, the Court finds that Plaintiff's hearing was not characterized by a lack of due process.

## II

### THE ALJ'S DECISION IS BASED ON SUBSTANTIAL EVIDENCE

Plaintiff frames her second issue as whether the ALJ complied with the Memorandum Opinion and Order of the District Court which remanded this matter for a new hearing.  In actuality, the issue is whether the final decision of the Commissioner is to be affirmed based on an absence of legal error and support by substantial evidence.  See Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009)(stating that the Commissioner "has statutory authority to interpret and enforce" the Social Security Act under 42 U.S.C. § 405(a), and that the Commissioner's construction of the Social Security Act must be given "considerable weight").  Regardless of whether or not the ALJ fully complied with the Appeal Council's remand order following this Court's decision, judicial review must be limited to the question of whether the ALJ's decision is supported by substantial evidence and reflects the application of the correct legal standards.  In order to make this determination, the Court must examine the various sub-issues which are contained within Plaintiff's Issue Two.

### A.    Rejection of Treating Physician's Opinion.

Plaintiff was treated by Dr. Lustig.  In the ALJ's initial decision, he gave lesser weight to Dr. Lustig because he concluded that Dr. Lustig based his opinion on Plaintiff's physical condition rather than her mental impairment.  The Court found this to be an

inadequate reason for the ALJ to reject Dr. Lustig's opinion. (See AR 749, line 1-750, line 16.)   The Court also noted that while the ALJ previously relied on the opinion of Dr. Maibaum, there was a failure to evaluate the opinion of Dr. Tribble or to address inconsistencies between these opinions. (Id.)   Thus, the Court ordered that on remand the ALJ must evaluate the mental health evidence and give sufficient reasons to support a mental residual functional capacity ("RFC") assessment. (AR 751.)

On remand, the ALJ concluded that because of Plaintiff's severe impairment of depression, she had moderate limitations in maintaining attention and concentration, moderate limitations in carrying out detailed tasks, and moderate limitations in interacting with coworkers and supervisors. (AR 687.)   This was a more restrictive mental RFC than had been found in the original 2009 hearing decision. (AR 61.) In making these findings, the  ALJ noted that Plaintiff was seen by Dr. Lustig in August 2006 for a psychiatric evaluation in connection with her workers compensation claim. (AR 689; 276-89.)   Dr. Lustig made an assessment of Plaintiff's mental functioning. (AR 276-89.)   Plaintiff was also seen in December 2006 by Dr. Riahinejad for a consultative examination in connection with her Social Security applications. (AR 688-89, 206-210.)   Dr. Riahinejad concluded Plaintiff would have mild to moderate difficulty in understanding, remembering and carrying out complex and detailed instructions, but was capable of relating to people and accepting supervision.   Plaintiff was seen in February 2007 by Dr. Nehorayan, a colleague of Dr. Lustig, who also made mental impairment assessments. (AR 272-274.)

The ALJ noted that Dr. Tribble saw Plaintiff between July 2006 and October 2006 in connection with her workers compensation claim and

1  made various mental impairment assessments. (AR 692, 472-81, 606-21,
2  622-56.)

3      In October 2006, as the ALJ noted, Plaintiff was seen by Dr.
4  Maibaum, also in connection with a workers compensation case.  While
5  Dr. Maibaum did not make a psychiatric diagnosis, he indicated
6  Plaintiff could be referred for psychotherapy and that her condition
7  was moderate. (Ar 692, 599-607.)

8      Plaintiff saw Dr. Charuvastra between June 2006 and April 2007.
9  The treatment notes indicate that Plaintiff was depressed, had short
10 concentration, intact memory with difficulty in immediate and recent
11 memory due to depression, a somewhat tenuous impulse control and
12 irritability, and, finally, that her psychiatric illness was a product
13 of her chronic pain. (AR 695, 262-64.)  He noted that Plaintiff was
14 seeing a psychiatrist in 2006, but there is no such notation for 2007.
15 Dr. Charuvastra indicated he began Plaintiff on the antidepressant
16 Prozac and the sleep-aid Halcyon, but these prescriptions are absent
17 from later treatment notes. (AR 236, 239, 242, 248, 251, 254.)

18     As the ALJ noted, between May 2007 and May 2008, Plaintiff was
19 treated for depression and was prescribed medications, including one
20 for anti-seizure and one for anti-anxiety. (AR 698, 564-87.)

21     The ALJ noted that in March 2007, a State Agency reviewing
22 physician (Dr. Mallare) found that Plaintiff had an affective disorder
23 which would cause mild limitations in various areas of mental
24 functioning. (AR 693, 211-224.)  A reviewing physician, Dr. Carlson,
25 adopted Dr. Mallare's assessment in July 2007. (AR 300.)

26     The ALJ also summarized Plaintiff's testimony, including a
27 statement that she no longer saw Dr. Charuvastra.  Plaintiff testified
28 she was seeing another doctor for anxiety and depression and that she

1  received medications from this physician, Dr. Lopez. (AR 720-21.)

2      Plaintiff ceased medical treatment in 2008 and there is no

3  evidence of further orthopedic and psychiatric consultative

4  examinations until after the remand. (AR 695.)

5      In a February 2011 consultative examination, Plaintiff indicated

6  she was prescribed an antidepressant from her primary care physician

7  and that she had never seen a psychiatrist. Dr. Levin indicated that

8  Plaintiff had no functional limitations from a psychiatric standpoint

9  and there was no evidence that Plaintiff in fact was prescribed an

10  antidepressant until 2011. (AR 799, 695.)

11      The ALJ noted that Drs. Lustig, Nehorayan, Tribble and Maibaum

12  evaluated Plaintiff for purposes of her workers compensation claim,

13  but failed to provide treatment, and therefore he would give their

14  opinions "lesser weight." (AR 695.)

15      Based on all of this evidence, the ALJ concluded that before

16  Plaintiff was seen by Dr. Levin in February 2011, her mental

17  impairment caused only moderate limitations in certain areas of mental

18  functioning. (AR 694.)

19      The ALJ's assessment that the workers compensation physicians

20  were entitled to lesser credibility because they were not treating

21  physicians is an accepted basis of evaluation in Social Security

22  cases.

23      Evaluating all of the evidence in the record regarding

24  Plaintiff's mental impairment and any functional restrictions caused

25  by it, the ALJ effectively balanced some of the competing or at least

26  inconsistent findings of the various physicians in formulating a

27  mental RFC. The restrictions assessed by Dr. Riahinejad and Dr.

28  Maibaum were compared by the ALJ with more restrictive assessments of

1  Drs. Tribble, Lustig and Nehorayan.   Ultimately, the ALJ made a

2  rational and supportable determination among competing evidence.

3

4      **B.   <u>Consideration of Physical Health Evidence</u>**.

5      As Plaintiff correctly points out, in its previous decision in

6  this case, the Court found that the ALJ had not provided any reason to

7  reject the opinion of her treating physician, Dr. Larsen. (AR 756-

8  757.)   On remand, however, the ALJ acknowledged that Plaintiff had

9  discussed Dr. Larsen in her own testimony (AR 688).   In his decision,

10 he summarized in detail Dr. Larsen's findings. (AR 690.)   The ALJ also

11 discussed treating records from Dr. Larsen and summarized them. (<u>Id</u>.)

12 The ALJ discussed evidence that conflicted with Dr. Larsen's opinion,

13 which led him to give less weight to the latter.   This included a

14 November 2004 workers compensation examination by Dr. Rosco (AR 690,

15 366-373) and a November 2005 orthopedic examination by Dr. Rosenberg

16 (AR 691, 432-41).   The ALJ found Dr. Rosenberg's opinion to be more

17 valid and consistent with that of Dr. Rosco. (AR 691.)   Other medical

18 records were cited by the ALJ in support of this conclusion, including

19 July 2006 medical records of Dr. Valdez (AR 691, 468-71), and July

20 2007 medical records from Dr. Brourman (AR 692, 491-500).   There were

21 also medical records from 2007 from Dr. Linder (AR 692, 507-24, 657-

22 76).   The ALJ found, for example, that Dr. Linder concluded that there

23 were no abnormal findings from a neurological examination, thus

24 contradicting Dr. Larsen's conclusion that Plaintiff suffered from

25 carpal tunnel syndrome. (AR 695.)

26     All in all, the Court must find that the ALJ took to heart its

27 remand, including its instruction that Dr. Larsen's opinion must be

28 evaluated both in and of itself, and in conjunction with other medical

opinions.  This in fact occurred, and the Court cannot find that the ALJ committed reversible error in making these evaluations.

### C.  __Plaintiff's Subjective Testimony__.

In the Court's remand order, it found that the ALJ's analysis of Plaintiff's subjective symptoms was deficient (AR 752-56), and therefore ordered the ALJ to reevaluate her credibility. (AR 756.) This time around, the ALJ did not rely upon Plaintiff's immigration status as an improper basis to depreciate her credibility, and did not make a finding of malingering with regard to Dr. Rosenberg's assessment of symptom magnification. (AR 691.)  Rather, the ALJ used accepted and standard techniques of credibility assessment.

After reviewing Plaintiff's testimony at the resumed hearing, the ALJ determined to give her subjective complaints limited weight because there was a lack of support in treatment records for the extent of her complaints.  This is one obviously permissible factor of credibility assessment, although it cannot be the only one.  The ALJ also found that Plaintiff had received inconsistent treatment for her depression, noting that she had told Dr. Levin she had never seen a psychiatrist, and that she was primarily treated with anti-seizure medications and anti-anxiety medications rather than antidepressants. In addition, Plaintiff had not been prescribed narcotic pain medication other than an isolated prescription for Vicodin in November 2007.  Other than that, Plaintiff utilized conservative treatment which may be compared with the extent of complaints in formulating a credibility assessment.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

Further, the ALJ noted that in spite of her complaints of pain

and history of surgeries, she continued working for three to four years after her surgery. (AR 688, 695-96.)   This factor was permissible in the process of evaluating Plaintiff's credibility.   <u>See Osenbrock v. Apfel</u>, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

Finally, the ALJ noted an absence of any treatment after 2008 other than medication refills which also constitutes (as failure to seek treatment or failure to follow prescribed treatment) a proper credibility assessment factor.   <u>See Orn v. Astrue</u>, 495 F.3d 625, 638 (9th Cir. 2007).

The Court finds that on remand the ALJ's credibility assessment is supported by substantial evidence.


**III**

**THE TESTIMONY OF THE VOCATIONAL EXPERT WAS PROPERLY RELIED UPON**

**A.   The Vocational Expert Was Properly Qualified to Testify**.

In her third issue, Plaintiff asserts that the VE was not properly qualified; that her testimony deviated from the Dictionary of Occupational Titles ("DOT") without any explanation of the deviation; and that she gave testimony too uncertain to be of any value.   The Court rejects these contentions for the following reasons.

As to the qualifications of the VE, she testified that she has been a VE for over 30 years, has a master's degree in psychology, has been an expert witness on the panel [for Social Security hearings] for over ten years, and has a certificate of alcohol and drug abuse from UCLA. (AR 724.)   In answer to questions from Plaintiff's counsel, she indicated that she is doing vocational counseling with about ten people, that she does not have a degree in vocational rehabilitation. (<u>Id</u>.)   She is a member of the International Association of

11

1  Rehabilitation Professionals. (Id.)

2       The ALJ overruled the objections of Plaintiff's counsel to the
3  lack of qualifications of the VE.

4       As Plaintiff's counsel correctly concedes, there is no definition
5  of a VE in the Social Security Act.  20 C.F.R. § 404.5 provides that
6  a vocational expert is a "vocational professional who has the
7  qualifications required by the Commissioner ..."  Plaintiff also cites
8  a document called a Vocational Expert Handbook and also the DOT
9  itself.  As to the Vocational Expert Handbook, Plaintiff claims that
10  the VE failed the requirement therein at p. 11, which is that
11  vocational experts must possess up-to-date knowledge with regard to
12  industrial and occupational trends and local labor conditions.  As to
13  the DOT, Plaintiff has found titles for the occupation "Vocational
14  Counselor," which are summarized in the JS. (See, Id. at 45-46.)

15       Initially, the Court notes that the applicable regulation, 20
16  C.F.R. § 405.5, defines a VE as a vocational professional who has the
17  qualifications required by the Commissioner.  Certainly, that would
18  not allow the Commissioner to qualify a hod carrier as a VE, but
19  nothing like that extreme example is provided by this case.  The
20  Commissioner is guided by the Hearings, Appeals and Litigation Law
21  Manual (known as "HALLEX") which provides that vocational experts "are
22  vocational professionals who provide impartial expert opinion during
23  the hearings process ..."  Pursuant to that internal regulation, the
24  VE testified that she has acted as a vocational expert for over 30
25  years and has been on the expert witness panel for over ten years.
26  She has provided vocational counseling for about ten people, has
27  advanced degrees and some certificates in relevant areas.  Simply put,
28  the Court cannot find that the VE in this case was unqualified, in

part based on the fact that there are no strict qualifications in any of the applicable regulations which this VE failed to meet.  With regard to Plaintiff's argument that the Court should use analogous DOT occupational descriptions, the Court cannot find any legal precedent which would allow that type of analysis.  Moreover, the Court declines Plaintiff's invitation to review various websites concerning vocational rehabilitation counselors.  The Court will confine itself to the record in this case.

Finally, while Plaintiff claims there were inconsistencies in the VE's testimony between the requirements of her past relevant work and the requirements of the DOT occupation, these are not specified, and the Court will not speculate.

For the foregoing reasons, the Court determines that Plaintiff's third issue is without merit.


**IV**

**THE VOCATIONAL EXPERT'S TESTIMONY WAS PROPERLY RELIED UPON**

**TO SUPPORT A FINDING OF NON-DISABILITY AT STEP FOUR**

Plaintiff's final issue is that, for various reasons, the ALJ should and could not rely upon the testimony of the VE in finding at Step Four of the sequential evaluation process that Plaintiff could perform her past relevant work.  In making this argument, Plaintiff combines a number of separate contentions, including the following: that the hypothetical questions posed to the VE were inadequate or incomplete; that the hypothetical questions improperly excluded Plaintiff's subjective pain complaints as reflected in her testimony; and that the hypothetical questions improperly excluded limitations assessed by Plaintiff's psychiatrist and her orthopedist.

Addressing the first sub-issue, the Court concludes that the hypothetical questions posed to the VE properly incorporated Plaintiff's functional limitations as determined by the ALJ in his decision. Of course, it is hornbook law that the limitations posited in hypothetical questions must incorporate all of the found limitations and restrictions of the particular claimant. See Embrey v. Bowen, 849 F.3d 418, 422 (9th Cir. 1988). In this case, the VE identified Plaintiff's past relevant work in relation to the DOT as "overlock sewing machine operator, DOT 786.682-194." (AR 726.) The hypothetical questions posed to the VE (see AR at 728-29), in particular the first question, correlated well with the RFC assessed by the ALJ. (AR 687, 694.) As such, the ALJ found that the restrictions in the hypothetical question as to Plaintiff's limitations conformed to the DOT descriptions of Plaintiff's past relevant work.

In formulating the RFC, the ALJ relied upon an orthopedic consultative examination ("CE") performed by Dr. Pollis (AR 694, 803-13). This CE was triggered by the Court's remand and instructions from the Appeals Council. As the ALJ noted, it appeared that Plaintiff did not receive any medical treatment in 2008 or thereafter, (other than medicine refills), until she was seen in 2011 for the CE (both orthopedic and psychiatric). Based on this new evidence, to which was accorded "considerable weight" (AR 696), the ALJ determined that Plaintiff's RFC had changed from the RFC assessed in the previous decision. (See 20 C.F.R. §§ 404.1545(a), 416.945(a).)

Plaintiff argues that the exertional requirements of the DOT as to her past relevant work include a "temperaments" category which, she argues, were not incorporated into the ALJ's hypotheticals, and in

particular, did not utilize restrictions imposed by Dr. Lustig.  But, as the Court has already discussed, the ALJ rejected Dr. Lustig's opinions, and as such, they were not required to be included with the hypothetical questions.  Further, the hypothetical questions assumed that Plaintiff would have "moderate" restrictions in maintaining concentration, persistence, and pace and in carrying out detailed tasks, and also in interacting with coworkers and supervisors. (AR 687, 726.)  The Court finds no error in this portion of the hypotheticals.  Further, the VE testified that the only possible ambiguity with regard to Plaintiff's performance of her past relevant work was whether she performed it at the medium exertional level, as against the light exertional level, and was not because of any mental restrictions.

Plaintiff also incorporates in her fourth issue a failure by the ALJ to include restrictions imposed by other medical sources, such as Dr. Larsen.  Again, the Court has already addressed the ALJ's assessment and rejection of some of Dr. Larsen's opinions.

With regard to Plaintiff's own testimony regarding functional limitations, the ALJ did not include them, after making credibility findings. (AR 695.)  Giving Plaintiff's counsel the benefit of the doubt, it would appear that she is raising a challenge to these credibility findings. (See JS at 56-57.)  The Court rejects this challenge, in that the ALJ provided sufficient and substantive reasons in the decision (see AR at 693-94) to reject Plaintiff's credibility: a lack of narcotic pain medication in the face of complaints of severe pain; a cessation of medical treatment in 2008; no evidence of psychiatric treatment after 2007; and contradictions concerning Plaintiff's report to a consultative psychiatric examiner as to the

15

1   fact that she had never seen a psychiatrist. (See, Id.)  Based on

2   this, the ALJ properly gave "limited weight" to her testimony and

3   statements.

4       Finally, Plaintiff appears to argue that she should be found to

5   be disabled under the Medical-Vocational Guidelines, known as the

6   "Grids." (See 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule

7   202.09.)  But in this case, the ALJ determined that Plaintiff could

8   perform her past relevant work at Step Four of the sequential

9   evaluation process.  The Grids are used at Step Five only where there

10  is a determination that a claimant cannot do past relevant work.  For

11  that reason, Plaintiff's argument is unavailing.

12      For the foregoing reasons, the decision of the ALJ will be

13  affirmed.  The Complaint will be dismissed with prejudice.

14      **IT IS SO ORDERED.**

15

16  DATED: August 1, 2012            /s/
                                     _____
17                                   VICTOR B. KENTON
                                     UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28